**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | |
|---|---|
| JAMIE BRUBAKER, )||
| ) ||
|     Plaintiff, )||
| ) ||
| v. ) | No. 3:10-CV-477 |
| ) | (Phillips) |
| MICHAEL BARRETT, )||
| COMBINED INS. CO. OF AM., and )||
| AON INS. MGMT. SERVS., INC., )||
| ) ||
|     Defendants. )||

**MEMORANDUM AND ORDER**

This matter is before the Court on the Motion to Compel Arbitration and Dismiss [Doc. 3] filed by defendants Combined Insurance Company of America ("Combined Insurance") and AON Insurance Management Services, Inc. ("AON") (collectively, "Defendants" for purposes of this Memorandum and Order). Plaintiff has filed this lawsuit against her former employer, Combined Insurance, and immediate supervisor, Michael Barrett ("Mr. Barrett"). In particular, Plaintiff has filed claims of sexual harassment, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, constructive discharge, outrageous conduct, invasion of privacy, and recklessness. All of these claims have been brought under state law.

As a basis for this lawsuit, Plaintiff alleges that Mr. Barrett recorded a video of her undressing in a hotel room. This allegedly occurred during a work conference for Combined Insurance. After learning about the video, Plaintiff argues that she was forced to resign from her

1

position.[1]  Plaintiff wants to hold Combined Insurance and AON liable for Mr. Barrett's actions.

In response, Combined Insurance and AON argue that Plaintiff's claims should be dismissed, or at least stayed pending arbitration.  In May 2008, Plaintiff signed an employment contract with ACE Group of Companies ("ACE"), in which she agreed to submit all "employment related legal claims" to mandatory arbitration.  Plaintiff also agreed to submit any claims against ACE's subsidiaries and affiliates, including Combined Insurance.[2]  The arbitration agreement does not affect Plaintiff's claims against Mr. Barrett.

The following issues are before the Court.  First, is the arbitration agreement an enforceable contract?  In particular, was the agreement supported by consideration and mutual assent?  Second, assuming that there was an enforceable agreement, are Plaintiff's claims against Combined Insurance and AON subject to arbitration?  In other words, are Plaintiff's claims within the scope of the arbitration agreement?

Based upon the following, the Motion to Compel Arbitration and Dismiss [Doc. 3] is **GRANTED IN PART AND DENIED IN PART.**

## I.    BACKGROUND

On November 12, 2010, Plaintiff filed this action against her former employer, Combined Insurance, and immediate supervisor, Mr. Barrett.[3]  [Plaintiff's Complaint, Doc. 1].  Combined

---

[1] Technically, Plaintiff was an employee at ACE Group of Companies when she resigned from her position.  As the Court will explain in more detail, ACE Group of Companies purchased Combined Insurance in 2008.  [Defendants' Memorandum in Support of their Motion to Compel Arbitration, Doc. 5, at 2].  By the time Plaintiff resigned from her position, Combined Insurance was a subsidiary of Ace Group of Companies.  [Id., at 1 n.1].

[2] *See* n.1.

[3] While Plaintiff also filed this lawsuit against AON, its status is unclear  If AON is an affiliate or subsidiary of ACE, then Plaintiff's "employment-related" claims against AON are also subject to arbitration.  At the moment, however, neither party has provided sufficient information about AON.  It is

2

Insurance is an insurance company that provides "short term disability, accidents and sickness, health, life and medicare supplemental insurance." [Defendants' Memorandum in Support of their Motion to Compel Arbitration, Doc. 5, at 2] [citation omitted]. In 2008, ACE acquired Combined Insurance. [Id., at 3]. Prior to the acquisition, Combined Insurance was a wholly-owned subsidiary of AON. [Id.]. Combined Insurance is now a subsidiary of ACE. [Id., at 1 n1.].

Following this acquisition, ACE mailed a welcome package to its commissioned employees. [Id.]. Plaintiff received a package in April 2008, which included the "ACE Policy Supplement to Commissioned Employee Handbook" ("Employee Handbook Supplement," Doc. 4-1). Notably, the Employee Handbook Supplement included two sections on arbitration. The first section was titled "Employment Dispute Arbitration Policy" ("Arbitration Policy"), which explained the types of claims subject to arbitration. The other section was titled "Employment Dispute Arbitration Rules and Procedures" ("Arbitration Procedures").

The Employee Handbook Supplement also included a page titled "Arbitration Agreement Form" ("Arbitration Form" or "Form").[4] [Signed Form, Doc. 4-4]. On this page, the employee was directed to sign the Form (which included a signature block at the bottom) and mail it to ACE. [Id.]. The Form provided, in its entirety:

> I agree that, in the event I have any **employment related legal claims**, I will submit them to final and binding neutral third-party arbitration, **in accordance with the ACE Employment Dispute Arbitration Policy** recited above, which is made a part of this agreement. I understand that this agreement means that **I cannot bring any employment related claim in court** and that I waive my right to a jury trial for such claims.

---

unclear whether AON is owned by ACE, or whether it was ever affiliated with ACE. As the Court will instruct later in this Memorandum and Order, the parties are ordered to brief this issue. *See* Part III.B.

[4] Collectively, the Court shall refer to the Arbitration Policy, Arbitration Procedures, and Form, as the "Arbitration Agreement."

[Id.] [emphasis added].  The Form also expressly incorporated the Arbitration Policy,[5] whereby

Plaintiff agreed to submit the following claims to arbitration:

> This policy covers **all employment-related disagreements and problems** that concern a right, privilege or interest recognized by applicable law.  Such disputes include claims, demands, disputes, controversies under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, and any other federal, state, or local statute, regulation, ordinance or common law doctrine, regarding unfair competition, employment discrimination **or termination of employment**.  **This policy is intended to substitute final and binding arbitration for court action**, and its related delays and inefficiencies.  **This policy also applies to claims that arose prior to the adoption of this policy, pending at the time this policy is distributed, and future claims.**  This policy will apply to any successors or assigns of ACE.  Further, ACE reaffirms its intent that there will be no right or authority for any dispute to be brought, heard or arbitrated as a class action or private attorney general.
>
> If ACE has a legal claim against an employee, ACE must utilize the Employment Dispute Arbitration Rules and Procedure that are a part of this policy, rather than go to court.  **This policy is a term and condition of the employment relationship between employees and ACE.**  It is not, however, a guarantee that employment will continue for any specified period of time or end only under certain conditions.

[Arbitration Policy, Doc. 4-2] [emphasis added].  Plaintiff signed the Form–which was a condition

of continued employment–dated May 2, 2008.  [Signed Form, Doc. 4-4].  Pursuant to the Arbitration

Agreement, Plaintiff agreed to submit all "employment-related disagreements and problems" against

---

[5]  The Tennessee Supreme Court has held that "a writing may be incorporated by reference into a written contract, thereby requiring both writings to be construed together."  Staubach Retail Servs.-Southeast, LLC v. H.G. Hill Realty Co., 160 S.W.3d 521, 525 (citation omitted).  Because the terms of the Arbitration Form (the paragraph that Plaintiff signed) expressly incorporated the Arbitration Policy, the language of the Arbitration Policy became part of the overall agreement.

4

ACE (along with any of ACE's subsidiaries or affiliates[6]) to arbitration.

On November 12, 2010, Plaintiff filed this lawsuit against Combined Insurance, AON, and her previous supervisor, Mr. Barrett. Plaintiff has filed claims of: (1) sexual harassment; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; (4) negligence; (5) constructive discharge; (6) outrageous conduct; (7) invasion of privacy (including three separate types); and (8) recklessness. Plaintiff's claims–all of which arise under state law–are based upon incidents that allegedly occurred *before* and *after* Plaintiff signed the Form. The following is a summary of Plaintiff's allegations.

In February 2002, Plaintiff began working for Combined Insurance. [Plaintiff's Complaint, Doc. 1, at 2, ¶¶ 6-7]. Plaintiff remained employed by Combined Insurance until she resigned in June 2005. [Id.]. In July 2006, Plaintiff was re-hired by Combined Insurance. [Id., at 2, ¶ 8]. In December 2006, Plaintiff was promoted to Branch Manager of Wyoming and Montana. [Id.].

During this time, Mr. Barrett was employed as the Executive Administrator of the Life Health Division. [Id., at 2, ¶ 9]. As part of his duties, Mr. Barrett oversaw the administrative assistants in the Life Health Division. [Id., at 3, ¶ 10]. Plaintiff claims that Mr. Barrett was her immediate supervisor. [Id., at 5, ¶ 22].

During January, April, and August of 2007, Plaintiff traveled to Chicago, Illinois for work conferences. [Id., at 3, ¶¶ 11-14]. Mr. Barrett also attended these trips, which were conducted for

---

[6] As the Arbitration Policy makes clear, Plaintiff's "employment-related" claims against ACE's subsidiaries and affiliates are also subject to arbitration. [Arbitration Policy, Doc. 4-2, at 2 n.1]. The Policy provides: "As issued herein, 'ACE' means ACE US Holdings, Inc., its subsidiaries and affiliates, and ACE INA holdings, Inc., its subsidiaries and affiliates, ACE Insurance Company, ACE Financial Services Inc., and its subsidiaries, and ACE Capital Re USA Holdings Incorporated and its subsidiaries." [Id.]. Combined Insurance is a subsidiary of ACE. [Defendants' Memorandum in Support of their Motion to Compel Arbitration, Doc. 5, at 1 n.1].

5

job training. [Id.]. Plaintiff–along with other Combined Insurance employees–stayed in hotels during these trips. [Id.]. Plaintiff alleges that during one of these trips (or a later trip to Nashville, Tennessee in March 2009[7]), Mr. Barrett secretly filmed her while she undressed in a hotel room. [Id.]. Plaintiff claims that Mr. Barrett recorded the video by aiming a cell phone through the "peep hole" of her hotel room door. [Id., at 5, ¶ 22].

This is not the first time that Mr. Barrett has been accused of this conduct. In October 2009, Mr. Barrett was arrested for recording a "peeping tom" video of Erin Andrews, a reporter for the popular sports network, "ESPN." [Id., at 4, ¶ 17]. In December 2009, Mr. Barrett pled guilty to recording the video of Erin Andrews, and was sentenced to thirty months imprisonment.[8] In April 2010, the Federal Bureau of Investigation ("FBI") informed Plaintiff that they had a possible match on a video recorded by Mr. Barrett. [Id., at 4, ¶ 20]. Plaintiff watched the video and confirmed that it was her undressing in a hotel room. [Id., at 4, ¶ 21]. Plaintiff alleges that Mr. Barrett released the video (or at least images of it) onto the Internet, [id., at 5, ¶ 23], and that Combined Insurance "knew or had reasonable grounds to know that Barrett was making these videos . . ." [Id., at 5, ¶ 21].

On November 12, 2010, Plaintiff filed suit against Mr. Barrett, Combined Insurance, and AON. [Plaintiff's Complaint, Doc. 1]. On December 17, 2010, Combined Insurance and AON filed a Motion to Compel Arbitration [Doc. 3]. The Arbitration Agreement does not affect Plaintiff's claims against Mr. Barrett.

---

[7] Plaintiff alleges that during March 2009, she "stayed at the Holiday Inn hotel in Nashville, Tennessee (2200 Elm Hill Pike) and Barrett stayed on the same floor . . ." [Plaintiff's Complaint, Doc. 1, at 4, ¶ 16].

[8] Erin Andrews Stalker Gets 30 Months in Prison, N.Y. Post, Mar. 16, 2010, *available at* http://www.nypost.com/p/news/national/erin_andrews_peeper_faces_sentencing_p0SCSVbbZIP1UayQO felpN

6

In addition to the Motion to Compel Arbitration [Doc. 3], the Court must resolve another matter. On February 3, 2011, Mr. Barrett filed a letter with the Court requesting that he receive legal representation. [Doc. 11]. Mr. Barrett is currently incarcerated[9] in a federal prison located in Edgefield, South Carolina, serving his sentence for recording the video of Erin Andrews. [Id.]. Mr. Barrett, who has appeared *pro se* in this matter, states that he is "innocent of the allegations made against [him] in this lawsuit," and that "[t]his is clearly a case of someone trying to get something for nothing through the use of the court system." [Id.]. In addition, Mr. Barrett states that he is not "in a position to afford an attorney to defend [him] in this case," and that he is "hoping the Court can point me in the right direction, as to the names of Attornies or Legal aide in the Knoxville area who can assist me with my defense." [Id.].

## II. ANALYSIS

### A. The Arbitration Agreement

#### 1. Introduction

On December 17, 2010, Defendants petitioned the Court to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. [Defendants' Motion to Compel Arbitration, Doc. 3]. That statute provides, in relevant part:

> A party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

---

[9] As the Court will explain in Part II.C., this issue–whether Mr. Barrett should receive legal representation–is referred to the Honorable C. Clifford Shirley, United States Magistrate Judge.

9 U.S.C. § 4.  In order for the FAA to apply, two conditions must be satisfied: (1) the arbitration agreement must be in writing; and (2) the agreement must be part of "a contract evidencing a transaction involving commerce."  9 U.S.C. § 2.  The FAA applies in this case because the Arbitration Agreement–which was part of a supplement to the employee handbook–was in writing and "involves" (or affects[10]) interstate commerce.  Notably, the Arbitration Agreement was a "condition of employment" to work at ACE–a company that provides insurance coverage throughout North America.  The Supreme Court has clearly held that the FAA applies to arbitration clauses contained in employment contracts, such as in the present case.  *See* Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 132-33 (2001).

Having found that the FAA applies, the Court must apply a two-part test to determine whether arbitration should be compelled.  First, the Court must determine whether the Arbitration Agreement is enforceable–that is, not "in issue."  Second, the Court must determine whether Plaintiff's claims against Combined Insurance fall within the scope of the Arbitration Agreement.

### 2.    The Arbitration Agreement is Enforceable

Section 2 of the FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, *save upon such grounds as exist at law or in equity for the revocation of any contract*." 9 U.S.C. § 2 (emphasis added).  When a party moves to compel arbitration, the court must first decide whether the arbitration provision is "in issue"– that is, whether it is enforceable as a contract under state law.  *See* Great Earth Cos., Inc. v. Simmons, 288 F.3d 878, 889 (6th Cir. 2002) ("If the

---

[10]  In Allied-Bruce Terminix Cos., Inc. v. Dobson, the Supreme Court held that for purposes of Section 2 of the FAA, the word "involving" is "broad and is indeed the functional equivalent of 'affecting.'"  513 U.S. 265, 273-74 (1995).  This was partly based upon the fact that Congress enacted the FAA pursuant to its Commerce Clause power, U.S. CONST. art. I, § 8, cl. 3.  Id. at 274-75 (citations omitted).  Consequently, the word "involving commerce" is to be given a "broad interpretation."  Id. at 275.

district court is satisfied that the agreement to arbitrate is not 'in issue,' it must compel arbitration. If the validity of the agreement to arbitrate is 'in issue,' the court must proceed to a trial to resolve the question."); Seawright v. Am. Gen. Fin. Servs., Inc., 507 F.3d 967, 974 (6th Cir. 2007) (recognizing that "[b]ecause arbitration agreements are fundamentally contracts, *we review the enforceability of an arbitration agreement according to the applicable state law of contract formation*") (emphasis added) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943-44 (1995)); Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 686-87 (1996) (recognizing that state law governs "generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or unconscionability"). To establish that the validity of an agreement is "in issue," the party opposing arbitration "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." Great Earth Cos., 288 F.3d at 889. This is similar to the burden imposed on a party opposing a motion for summary judgment. Id.

To determine whether the Arbitration Agreement is enforceable under Tennessee law[11], the Court must address each of the following issues. First, the Court must decide whether there was sufficient consideration to support the Arbitration Agreement. Second, the Court must decide whether there was mutual assent between the parties at the time of contract formation.

### a. The Arbitration Agreement Was Supported By Consideration

A fundamental principle of contract law is that contracts "must result from a meeting of the

---

[11] The Court has jurisdiction under 28 U.S.C. § 1332 ("diversity jurisdiction"), and therefore must apply the law of the forum state (Tennessee) in deciding whether the Arbitration Agreement is enforceable. *See, e.g.*, Uhl v. Komatsu Forklift Co., Ltd., 512 F.3d 294, 302 (6th Cir. 2008) ("When considering [the defendant's] contract-law argument, because we are sitting in diversity, we apply the law, including the choice of law rules, of the forum state. In this case, the forum state is Michigan, so we must apply the law that Michigan would apply when interpreting the arbitration agreement.") (internal quotations and citation omitted).

minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." Doe v. HCA Health Servs. of Tenn., Inc., 46 S.W.3d 191, 196 (Tenn. 2001) (citations omitted). Plaintiff argues that the arbitration clause is not enforceable because there was no "meeting of the minds." [Plaintiff's Response in Opposition to the Motion to Compel, Doc. 8]. This, of course, is rebutted by the fact that Plaintiff signed the Arbitration Agreement. [Signed Arbitration Form, Doc. 4-4]. In Tennessee, there is a rebuttable presumption that "[a]ll contracts in writing signed by the party to be bound, or the party's authorized agent and attorney, are prima facie evidence of a consideration." T.C.A. § 47-50-103. The Arbitration Form–which was located on a separate page from the rest of the Arbitration Agreement–stated the following:

> I agree that, in the event that I have any employment related legal claims, I will submit them to final and binding neutral third-party arbitration, in accordance with the ACE Employment Dispute Arbitration Policy recited above, which is made a part of this agreement. **I understand that this agreement means that I cannot bring any employment related claim in court and that I waive my right to a jury trial for such claims.**

[Signed Arbitration Form, Doc. 4-4] [emphasis added]. Plaintiff's signature is more than sufficient to raise a presumption of consideration. Not surprisingly, when one signs a contract, that person is presumed to have knowledge of its contents. *See, e.g.,* Giles v. Allstate Ins. Co., 871 S.W.2d 154, 156 (Tenn. Ct. App. 1993) ("[T]hat if, without being the victim of fraud [the person] fails to read the contract or otherwise learn its contents, he signs the same at his peril and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence.") (quoting Beasley v. Metro. Life Ins. Co., 229 S.W.2d 146, 148 (Tenn. 1950)).

To rebut this presumption, Plaintiff argues that the Arbitration Agreement was illusory (and

therefore lacks consideration). As the Court of Appeals for the Sixth Circuit has stated, a "promise is legally enforceable "only if the promisor receives in exchange for that promise some act or forbearance, or the promise thereof." Floss v. Ryan's Family Steak Houses, Inc., 211 F.3d 306, 315 (6th Cir. 2000) (applying Tennessee law) (citation omitted), *cert. denied*, 531 U.S. 1072 (2001). *See also* Kozy v. Werle, 902 S.W.2d 404, 411 (Tenn. Ct. App. 1995) ("Consideration consists when the promisee does something that he is under no legal obligation to do or refrains from doing [that] which he has a legal right to do."); Sutton v. First Nat'l Bank of Crossville, 620 S.W.2d 526, 531 (Tenn. Ct. App. 1981) ("It is, invariably held that the promise of one party is a valid consideration for the promise of the other party.") (quotation and citation omitted).

A promise is illusory when it "essentially promises nothing at all, or allow[s] the promisor to decide whether or not to perform the promised act." Walker v. Ryan's Family Steak House, 289 F. Supp. 2d 916, 929 (M.D. Tenn. 2003). *See also* Floss, 211 F.3d at 315 (recognizing that under Tennessee law, "a promise constitutes consideration for another promise only when it creates a binding obligation") (citation omitted). A contract is also illusory if it is indefinite in nature. *See* Jamestowne On Signal, Inc. v. First Fed. Sav. & Loan Ass'n, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990) ("Courts will not uphold agreements which are indefinite and uncertain as to the obligations imposed on the parties thereto.") (quotations and citation omitted).

Plaintiff argues that the Arbitration Agreement is illusory based upon a clause that allows ACE to unilaterally amend the Agreement. That clause provides:

> This policy cannot be changed except in writing by the vice president, ACE Employee Relations. No change to the policy will affect a pending claim unless the employee agrees to the change in writing with the employee's signature.

[Arbitration Policy, Doc. 4-2, at 2]. In support, Plaintiff relies mostly upon the Sixth Circuit's

decision in Floss, 211 F.3d at 310. While Floss also involved a unilateral amendment clause–and

Tennessee law–it is distinguishable for a number of important reasons.

In Floss, the plaintiffs (who were former employees of Ryan's Family Steak Houses, Inc.)

agreed to arbitrate all employment-related disputes with their employer. Id. Unlike the present case,

however, the arbitration agreement in Floss was not between a plaintiff and her former employer.

Id. Rather, the arbitration agreement in Floss was between the plaintiffs and a third-party arbitration

service. Id. The arbitration service promised an arbitral forum, and the plaintiffs waived their right

to sue their employer in court. Id. The arbitration agreement also allowed the arbitration service

to unilaterally amend the agreement without notifying the plaintiffs. Id. The district court held–and

the Court of Appeals agreed–that the plaintiffs did not receive adequate consideration from the

arbitration service. Id. Consequently, the clause was found unenforceable under Tennessee law.

Id. As the court explained:

> [The third-party arbitration service's] promise to provide an arbitral
> forum is fatally indefinite. Though obligated to provide some type
> of arbitral forum, [the third-party arbitration service] has unfettered
> discretion in choosing the nature of that forum. Specifically, [the
> third-party arbitration service] has reserved the right to alter the
> applicable rules and procedures without any obligation to notify,
> much less receive consent from, [the plaintiffs]. [The third-party
> arbitration service's] right to choose the nature of its performance
> renders its promise illusory.

Id. at 315-16.

In an attempt to compare the two cases, Plaintiff argues that the Arbitration Agreement is

illusory because–like Floss–it allows one party to unilaterally amend the agreement. That, however,

is not the reason why the arbitration agreement was found unenforceable in Floss. The Sixth Circuit

in a recent decision made this abundantly clear.

In Howell v. Rivergate Toyota, Inc., the Court of Appeals considered whether there was

sufficient consideration (under Tennessee law) to support an employment contract that provided an

arbitration clause similar to the present case. 144 F. App'x 475, 480 (6th Cir. 2005). In Howell, the

plaintiff (a former employee of Rivergate Toyota, Inc.) signed an agreement with his employer to

arbitrate any "employment-related" disputes. Id. at 477. Like the present case, the employer in

Howell had the right to unilaterally amend the arbitration agreement. Id. Specifically, the clause

allowed the employer to make any changes "necessary or appropriate to give effect to the intent"

of the arbitration agreement. Id. at 479 (internal quotations omitted). Even though the plaintiff

signed the arbitration agreement, he still filed employment-related claims against his employer in

federal court. Id. at 477. The plaintiff argued that the agreement lacked consideration based upon

the unilateral amendment clause. Id.

The defendant employer moved to compel arbitration, and the district court granted the

motion. Id. On review, the Court of Appeals had to decide whether the unilateral amendment clause

was supported by sufficient consideration–that is, whether it was an illusory clause. To address this

issue, the Court of Appeals had to decide whether Floss was controlling. It was not.

First, the Court of Appeals emphasized that the arbitration agreement in Floss was between

an employee and a third-party arbitration service, not between an employee and an employer. Id.

Notably, the employer in Floss did not agree to submit its *own* claims to arbitration. Id. As the

Court of Appeals explained:

> **The arbitration agreement at issue in Floss was between an
> employee and a provider of dispute resolution services, not
> between an employee and his employer**. **The dispute resolution
> firm [in Floss] obligated itself only to provide an arbitral forum,
> not to submit its own disputes to arbitration.** It was that obligation
> that was rendered illusory by the firm's unfettered right to choose the
> nature of the forum. Floss, in our view, is not controlling here.

<u>Howell,</u> 144 F. App'x at 480 (internal citations omitted) (emphasis added).  Like the employer in

<u>Howell</u>, ACE agreed to submit its *own* claims to arbitration:

> Both ACE and the employee will be bound by any decision made by
> a neutral arbitrator.  If the employee or ACE does not abide by the
> arbitrator's decision, either party may go to court to enforce the
> arbitrator's decision, but arbitration must be used before going to
> court.  **This policy prevents both ACE and the employee from
> going to court over employment-related disputes.**  However, this
> policy does not prevent, prohibit or discourage an employee from
> filing a charge with, or participating in an investigation by, the
> National Labor Relations Board (NLRB); the Equal Employment
> Opportunity Commission (EEOC); or any state or federal
> administrative agency.

[Arbitration Policy, Doc. 4-2, at 1] [emphasis added].  In contrast to the third-party arbitration

service in <u>Floss</u>, ACE has done more than just promise an arbitral forum for Plaintiff's claims.

Notably, ACE promised to submit its own claims against Plaintiff to arbitration.  As the Court of

Appeals recognized in <u>Howell</u>, this promise–that both parties agree to submit their claims to

arbitration–provides a basis for consideration.  Regardless of whether the Arbitration Agreement

allows ACE to unilaterally amend it, the fact that ACE has agreed to submit its own claims to

arbitration distinguishes it from <u>Floss</u>.  As the court stated in <u>Howell</u>, the "reciprocal obligation to

arbitrate satisfies the mutuality obligation."  <u>Id.</u> at 480 (citing <u>Cooper v. MRM Inv. Co.</u>, 367 F.3d

493, 505 (6th Cir. 2004) ("Even if [the plaintiff] had far less bargaining power, that would not detract

from bilaterality, because [the defendant] has the same duty to arbitrate as [the plaintiff].") (applying

Tennessee law)).  *See also* <u>Wilks v. Pep Boys</u>, 241 F. Supp. 2d 860, 863 (M.D. Tenn. 2003) ("[T]he

plaintiffs' claims that the Agreement is invalid for lack of consideration and because it constitutes

an 'illusory promise' are without merit.  Both parties are bound to arbitrate claims arising in their

relationship."); <u>High v. Capital Senior Living Props. 2- Heatherwood, Inc.</u>, 594 F. Supp. 2d 789,

798-99 (E.D. Mich. 2008) ("Floss does not provide much guidance here, however, because it dealt with a stand-alone arbitration agreement between the defendant's employees and a third-party provider of dispute resolution services. The only consideration for the employees' promise to submit their dispute to arbitration was the provider's return promise to furnish an acceptable forum."); Crowe v. BE & K, Inc., No. 2:09-CV-873, 2010 WL 1640884, at *4 (S.D. Ohio Apr. 22, 2010) (holding that a clause in an arbitration agreement allowing an employer to unilaterally amend the agreement was not illusory because the employer was obligated "to submit disputes they may have against employees to binding arbitration"); Seawright, 507 F.3d at 974 ("In the agreement at issue, the arbitration process was binding on both employer and employee, regardless of who requested arbitration. Thus, employer and employee were equally obligated to arbitrate those disputes falling within the coverage of the plan. This is enough to ensure mutuality of obligation and thus constitute consideration.").

Second, the Court of Appeals in Howell emphasized that the amendment clause only allowed the employer to make limited changes to the arbitration agreement. 144 F. App'x at 480. In Howell, the employer had the right to make changes that were "necessary or appropriate to give effect to the intent" of the arbitration agreement. Id. at 47 (internal quotations omitted). The court held that because any changes would be limited to promoting the purpose of the arbitration agreement, the amendment clause was not indefinite (and therefore not illusory). As the court explained:

> [The plaintiff] contends that [the defendant employer's] authority to amend the Procedure vitiates the company's obligation. But as we have said, the unilateral amendment provision authorizes only procedural changes that promote the agreement's purpose– i.e., resolution of disputes through arbitration. It does not allow [the defendant employer] to avoid its obligation to arbitrate.

Id. at 480.

While the amendment clause in the present case does not contain the same "limiting" language as in Howell, this distinction is not important. In Howell, the Court of Appeals held that regardless of the language used in the amendment clause, the employer was under a duty of good faith and fair dealing to only makes changes consistent with the purpose of the arbitration agreement. Id. at 479. As the court stated:

> Further, [the defendant employer's] duty of good faith and fair dealing prohibits it from amending the Procedure for an improper or oppressive purpose. *Cf.* Elliott v. Elliott, 149 S.W.3d 77, 84-85 (Tenn. Ct. App. 2004) (stating that every party to a contract is bound by an implied duty of good faith and fair dealing).

Id.

While the amendment clause in the present case did not contain the same language as in Howell, ACE was still under the implied duty of good faith and fair dealing to only make changes consistent with the purpose of the agreement. Id. That purpose was listed as follows:

> ACE believes it is important to provide employees with an opportunity to resolve employment-related disagreements and problems fairly and quickly. Therefore, it is the policy of the ACE Companies ('ACE') that arbitration by a neutral third party is the required and final means for the resolution of any employment-related legal claim not resolved by the internal dispute resolution processes.

[Arbitration Policy, Doc. 4-2, at 1]. Because ACE was under the implied duty of good faith and fair dealing, ACE was limited in the types of changes it could make. Consequently, the unilateral amendment clause is not an illusory promise.

One more point about Howell. In that decision, the court held that the amendment clause only allowed for "procedural" changes to the arbitration agreement. 144 F. App'x at 479. As the court stated, "[t]he provision does not, in our view, authorize changes to the parties' substantive

16

rights and obligations." Id. Under the amendment clause, the employer could only make changes that were "necessary or appropriate to give effect to the intent" of the arbitration agreement. Id. at 479 (internal quotations omitted). While the clause did not expressly limit any amendments to "procedural" changes, the court held as much. Id. at 480. As the court explained, "the fact that the terms of the Procedure may be changed [does not] render the agreement too indefinite to be enforced, given the *limited nature of the changes that are permissible*." Id. (emphasis added).

In the present case, the amendment clause provided that only the Vice President of ACE Employee Relations could make changes to the Arbitration Agreement. [Arbitration Policy, Doc. 4-2, at 2]. The clause did not specify whether only "procedural" changes could be made, or whether the Vice President could make "substantive" changes.[12] But then again, neither did the amendment clause in Howell. Moreover, the clause in the present case is just as broad as the clause in Howell, and the Court of Appeals interpreted that clause as only allowing for "procedural" changes.

Assuming, however, that the amendment clause in the present case is illusory–because it allows ACE to unilaterally make "substantive" changes to the Arbitration Agreement, and the Court of Appeals would regard this as an important fact[13]–the Court would still enforce the Arbitration Agreement. In Taylor v. Butler, the Tennessee Supreme Court held that a void arbitration clause did not render the rest of an employment contract unenforceable. 142 S.W.3d 277, 287 (Tenn.

---

[12] "Substantive" changes would include enlarging or limiting the scope of claims subject to arbitration. "Procedural" changes would include amending the arbitration procedures (changing the location of the arbitration proceeding, or the process in selecting an arbitrator).

[13] It is unclear how important this fact–standing alone–would be. In Howell, the Court of Appeals relied on multiple facts in finding that the amendment clause was not an illusory promise. 144 F. App'x at 479-80. For example, the court emphasized that: (1) the defendant employer also agreed to submit its own claims to arbitration; and (2) the defendant employer was under the implied duty of good faith and fair dealing to only make amendments consistent with the purpose of the arbitration agreement. Id.

2004). As the court stated, "[i]f a contract or term thereof is unconscionable at the time the contract is made, a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term." Id. at 285 (citing Restatement (Second) of Contracts § 208 (1981)). More recently–and directly on point– the Tennessee Court of Appeals held that a void arbitration clause could be severed from the rest of the arbitration agreement. Chapman v. H&R Block Mort. Corp., No. E2005-00082-COA-R3-CV, 2005 WL 3159774, at * 8 (Tenn. Ct. App. Nov. 28, 2005) ("In the event that a provision of an arbitration agreement is found to be invalid, that provision may be deleted from the agreement, and otherwise the agreement may be given full effect consistent with the general policy of favoring the enforcement of arbitration agreements.") (citation omitted). *See also* Brooks v. The Finish Line, Inc., No. 3:05-0715, 2006 WL 1129376, at *7 (M.D. Tenn. Apr. 26, 2006) (excising an invalid arbitration clause from the remainder of the arbitration agreement based upon the agreement's severability clause and the federal policy favoring the enforcement of arbitration agreements) (citing Chapman, 2005 WL 3159774, at *4).

Whether a clause should be severed is based upon the intent of the parties. Bratton v. Bratton, 136 S.W.3d 595, 602 (Tenn. 2004) ("An agreement may be either entire or severable according to the intention of the parties. The intention of the parties is to be determined by a fair construction of the terms and provisions of the contract, by the subject matter to which it has reference, by the circumstances of the particular transaction giving rise to the question, and by the construction placed on the agreement by the parties in carrying out its terms.") (internal citations omitted). Even if the amendment clause in the present case was void, the Court would still sever that clause from the rest of the Arbitration Agreement. Like Chapman, the arbitration agreement in the present case contains a severability clause:

The terms of these rules and Procedures are severable. The invalidity or unenforceability of any provision herein shall not affect the application of any other provision. Where possible, consistent with the purpose of the Rules and Procedures, a court of competent jurisdiction may reform any otherwise invalid provision of these Rules and Procedures and enforce such provision as reformed.

[Arbitration Rules and Procedures, Doc. 4-2, at 20-21]. This clause–which clearly indicates the parties' intent–would allow the Court to sever the unilateral amendment clause from the Arbitration Agreement, and therefore make the rest of it enforceable.

### b. There Was Mutual Assent Between the Parties

Plaintiff also argues that the Arbitration Agreement was not "fully executed" because ACE representatives did not sign the Arbitration Form (only Plaintiff did). [Plaintiff's Memorandum in Support of her Response to Defendants' Motion to Compel, Doc. 8, at 3]. Under Tennessee law, however, it is not necessary that both parties sign a contract to establish mutual assent. Staubach Retail Servs.-Southeast LLC v. H.G. Hill Realty Co., 160 S.W.3d 521, 524 (Tenn. 2005) ("[A] written contract is not required to be signed to be binding on the parties."). Nor is it necessary for arbitration agreements. T.R. Mills Contractors, Inc. v. WRH Enter., LLC, 93 S.W.3d 861, 870 (Tenn. Ct. App. 2002) ("[O]therwise binding written contracts need not be signed in order for an arbitration clause contained therein to be enforceable."); Seawright, 507 F.3d at 978 ("[A]rbitration agreements under the FAA need to be written, but not necessarily signed.") (citation omitted).

While ACE representatives did not sign the Arbitration Form, it manifested assent in a different way. Notably, assent can be shown by "the course of dealing of the parties," and "whether the parties performed under its terms." T.R. Mills Contractors, 93 S.W.3d at 866 (citations omitted). For example, when a party "who has not signed a contract has nonetheless manifested consent *by performing under it and making payments conforming to its terms*, that party is estopped from

19

denying that the parties had a meeting of the minds sufficient to bind them to the contract." Id. (citation omitted) (emphasis added). In T.R. Mills Contractors, the Tennessee Court of Appeals held that an arbitration agreement was enforceable, even though one of the parties did not sign the agreement. Id. This is because the non-signing party manifested assent by performing the contract. Id. As the court explained, "when an agreement is reduced to writing but is signed by only one of the parties, it is binding on the non-signing party if that party has manifested consent to its terms." Id. (citations omitted).

Plaintiff signed the Arbitration Agreement–which was a condition of continued employment–dated May 2, 2008. [Signed Arbitration Form, Doc. 4-4]. ACE continued to employ (and pay) Plaintiff for another two years following this event. As long as ACE demonstrated mutual assent in this manner–by continuing to fulfill its obligations as Plaintiff's employer–it was not necessary that ACE representatives sign the Agreement. *See* Staubach, 160 S.W.3d at 525 ("When a party who has not signed a contract demonstrates its assent by *performing pursuant to the contract and making payments conforming to the contract's terms*, that party is estopped from denying the binding effect of the contract.") (citing T.R. Mills Contractors, 93 S.W.3d at 866) (emphasis added). Accordingly, the Court finds that both parties assented to the terms of the Arbitration Agreement.

### 3. Plaintiff's Claims Against Combined Insurance Fall Within the Scope of the Arbitration Agreement

Having decided that the Arbitration Agreement is enforceable, the Court must now determine whether Plaintiff's claims against Combined Insurance fall within the scope of it. As an initial matter, the Court must decide whether the Arbitration Agreement is "broad" or "narrow" in scope. This will determine what test the Court must apply in deciding whether Plaintiffs' claims are subject to arbitration. Pursuant to the Arbitration Agreement, Plaintiff and ACE (along with its subsidiaries

and affiliates) agreed to submit the following claims to arbitration:

> This policy covers **all employment-related disagreements and problems** that concern a right, privilege or interest recognized by applicable law. Such disputes include claims, demands, disputes, controversies under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, and any other federal, state, or local statute, regulation, ordinance or common law doctrine, regarding unfair competition, employment discrimination **or termination of employment**. **This policy is intended to substitute final and binding arbitration for court action**, and its related delays and inefficiencies. **This policy also applies to claims that arose prior to the adoption of this policy, pending at the time this policy is distributed, and future claims.** This policy will apply to any successors or assigns of ACE. Further, ACE reaffirms its intent that there will be no right or authority for any dispute to be brought, heard or arbitrated as a class action or private attorney general.

[Arbitration Policy, Doc. 4-2, at 1] [emphasis added]. This is obviously a broad provision, as it compels arbitration of "all employment-related disagreements and problems." *See* <u>Mouton v. Metro. Life Ins. Co.</u>, 147 F.3d 453, 456 (5th Cir. 1998) (finding that an arbitration clause stating that the plaintiff employee agreed to arbitrate "any dispute, claim or controversy that may arise between [himself] and the employer" was "broad" enough to encompass Title VII discrimination claims, even though the arbitration agreement did not explicitly mention "employment-related" disputes). While the Arbitration Agreement explicitly listed claims subject to arbitration (such as Title VII claims), its scope was not limited to only those claims. In fact, the claims listed in the Arbitration Agreement were just *examples* of claims subject to arbitration. *See* <u>Forbes v. A.G. Edwards & Sons, Inc.</u>, No. 08-CV-552, 2009 WL 424146, at *8 (S.D.N.Y. Feb. 18, 2009) ("Nothing in the language indicates that the parties intended to limit the scope of arbitration. Even where the arbitration clauses set forth

examples of the types of claims that should fall within the scope of the agreement, this is preceded by the language 'including, but not limited to.'").

Having found that this case involves a broad arbitration clause, there is a presumption that Plaintiff's claims fall within its scope. *See* United Steelworkers of Am. v. Mead Corp., 21 F.3d 128, 131 (6th Cir. 1994) ("Moreover, in cases involving broad arbitration clauses the Court has found the presumption of arbitrability 'particularly applicable,' and only an express provision excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'") (quoting At&T Techs. v. Comms. Workers of Am., 475 U.S. 643, 650 (1986)). In the Sixth Circuit, the test for determining whether a dispute falls within the scope of a broad arbitration clause is if "an action can be maintained without reference to the contract or relationship at issue, the action is likely outside the scope of the arbitration agreement–along with the presumption in favor of arbitrability and the intent of the parties." NCRS Corp. v. Korala Assocs., Ltd., 512 F.3d 807, 814 (6th Cir. 2008) (quoting Nestle Waters N. Am., Inc. v. Bollman, 505 F.3d 498, 505 (6th Cir. 2007)).

Many of Plaintiff's claims are explicitly barred by the Arbitration Agreement. Notably, Plaintiff agreed to submit to arbitration "all employment-related disagreements and problems that concern . . . employment discrimination . . . conditions of employment or termination of employment." In her complaint, Plaintiff has filed claims of sexual harassment (Count I), negligent supervision (Count IV), and constructive discharge (Count V). The sexual harassment claim is clearly an action based upon "employment discrimination," and therefore is subject to arbitration. The constructive discharge claim–that Plaintiff resigned from ACE because of Mr. Barrett's alleged actions–is related to "termination of employment," and therefore is also subject to arbitration. The "negligent supervision" claim also is subject to arbitration, as it relates to both "employment

discrimination" and "conditions of employment" (whether Combined Insurance or ACE should have fired Mr. Barrett). *See* <u>Lambert v. Austin Indus.</u>, 544 F.3d 1192, 1199 (11th Cir. 2008) ("A plain meaning interpretation of either the 'all workplace disputes' or 'disputes arising from or related to employment' language suggests that employment-termination disputes do indeed fall under the scope of the . . . arbitration agreement. It is axiomatic that a termination from a job 'arises from or relates' to employment.").

Plaintiff has also filed claims of intentional infliction of emotional distress (Count II), negligent infliction of emotional distress (Count III), outrageous conduct (Count VI), invasion of privacy (Count VII), and recklessness (Count VIII). These claims–which are all based upon the alleged actions of Mr. Barrett[14]–are also subject to arbitration. *See* <u>Electrolux Home Prods., Inc. v. Mid-South Elecs., Inc.</u>, No. 6:07-CV-016-KKC, 2008 WL 3493466, at *3 (E.D. Ky. Aug. 11, 2008) ("A claim, regardless of the legal label assigned to it, falls within the scope of a clause requiring arbitration of 'any dispute' if the allegations underlying the claim or its defenses involve matter covered by the agreement.") (citing <u>First Union Real Estate Equity & Mortg. Inv. v. Crown Am. Corp.</u>, 23 F.3d 406, at *3 (6th Cir. 1994) (unpublished table decision)). The following case–which also involves alleged actions by a co-worker during a work conference–is particularly instructive..

In <u>Forbes v. A.G. Edwards & Sons, Inc.</u>, the plaintiff filed suit against her former employer, A.G. Edwards & Sons, Inc. ("Edwards") and former co-worker, Douglas Pearl ("Mr. Peal."). No.

---

[14] Plaintiff has attempted to hold Combined Insurance liable under a theory of "respondeat superior" (or "vicarious liability"). In Tennessee, an employer is vicariously liable for torts committed by employees done within the course and scope of employment. *See, e.g.*, <u>Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.</u>, 840 S.W.2d 933, 937-38 (Tenn. Ct. App. 1992). An employee's conduct is within the scope of employment if: "(1) it is of the kind she is employed to perform; (2) it occurs within the authorized time and space limit; and (3) it is actuated, at least in part, by a purpose to serve the master." <u>Borg v. J.P. Morgan Chase & Co.</u>, No. 04-2874 M1/V, 2006 WL 2052856, at *10 (W.D. Tenn. July 21, 2006) (citing <u>Tenn. Farmers Mut. Ins.</u>, 840 S.W.2d at 938).

08-CV-552, 2009 WL 424146 (S.D.N.Y. Feb. 18, 2009). The plaintiff filed claims of: (1) sexual

harassment, sexual discrimination, and retaliation in violation of New York law; and (2) intentional

infliction of emotional distress, battery, and assault in violation of New York common law. Id., at

*1. In support, the plaintiff alleged that Mr. Pearl sexually assaulted her during a work conference:

> From January 21 through January 23, 2007, plaintiff attended a Retail Conference in Miami, Florida, as part of her work responsibilities with Edwards. Defendant Pearl, an Institutional Sales Manager at Edwards, also attended.

> The following is a summary of plaintiff's allegations in connection with that event. Following the conference presentations on January 22, 2007, a group of Edwards employees attended a group dinner, followed by socializing. During that time, Pearl began sexually harassing plaintiff through the use of profane and sexually inappropriate language, the use of obscenities, and physically abusive and sexually assaultive conduct. Pearl told plaintiff that he could hire and fire anyone at Edwards, which he followed with a request that plaintiff come work for him as his assistant. Pearl stated that he was her bosses' boss, and could therefore move her from the current position at Edwards if he wanted.

> Ultimately, in the early morning hours of January 23, 2007, Pearl subjected plaintiff to unwelcome physical advances, including kissing. Pearl then fraudulently lured plaintiff to his hotel room under the pretense of work-related matters, at which point Pearl physically attacked her by attempting to kiss her. Shortly thereafter, Pearl completely undressed, and physically grabbed plaintiff, forcing his hand up her skirt, while continuing to subject her to unwanted touching elsewhere. Pearl then forced plaintiff's hand onto his naked body, while using explicitly profane and vulgar language toward her. Finally, plaintiff was able to break free, and flee from Pearl's hotel room.

> Upon returning to work following the conference, Pearl continued to harass plaintiff with e-mails and phone calls, and when she did speak to him, he continued to use inappropriate language towards her. Plaintiff asserts that Pearl has engaged in sexually harassing and discriminatory conduct towards other female employees of Edwards predating his conduct towards plaintiff. Ultimately, based on the above mentioned conduct, plaintiff contends that she was forced to resign from her position with Edwards in

24

August 2007.

Id., at *2-3.  After the lawsuit was filed, the defendants moved to stay the action and compel

arbitration pursuant to the FAA.  Id., at *1.  The arbitration clause (which the plaintiff signed as part

of an employment contract) provided the following:

> I am agreeing to arbitrate any dispute, claim or controversy that may
> arise between myself and Edwards, or a customer or any other
> person.  This means that I am giving up the right to sue in court
> Edwards, its subsidiaries or employees or any customer or any other
> person concerning matters related to or arising from my employment.
> This includes giving up the right to trial by jury.

Id.  The plaintiff argued, *inter alia*, that her assault, battery, and intentional infliction of emotional

distress claims fell outside the mandatory arbitration clause.  Id., at *8.

As an initial matter, the court held that the FAA applied, and that the arbitration clause was

"broad" in scope.  Id. at *7-8.  The court then held that the plaintiff's intentional tort claims fell

within the scope of the arbitration clause.  Id.., at *8.  Even though one of the sexual assaults

allegedly occurred during after-hours (and not during the actual work conference or work-sponsored

social event), the court held that the plaintiff's claims involved a matter "related to or arising from"

the plaintiff's employment.  Id.  In support, the court emphasized that the plaintiff's claims were

based upon an incident that "involved plaintiff's co-worker, occurred during a work conference, and

contributed to what plaintiff alleges as a continued course of harassing conduct at work."  Id.

Like Forbes, the present case involves a co-worker who allegedly committed torts during a

work conference.  Plaintiff alleges that her supervisor, Mr. Barrett, recorded a video of her

undressing in a hotel room.  Like Forbes, this case involves: (1) a co-worker; (2) an incident that

allegedly occurred during a work conference; and (3) allegations of a harassing workplace.  Given

the broad scope[15] of the Arbitration Agreement, and the persuasive reasoning of <u>Forbes</u>, the Court

finds that all of Plaintiff's claims against Combined Insurance are subject to arbitration.

Moreover, even if there was doubt regarding whether Plaintiff's claims fell within the scope

of the Arbitration Agreement, the Court would resolve any doubt in favor of arbitration. *See*

<u>Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.</u>, 626 F.3d 256, 261 (6th Cir. 2010) ("The

presumption of arbitrability is particularly applicable in cases involving broad arbitration clauses.")

(citation omitted). Once a court determines that an arbitration clause is broad in scope (and

enforceable), the parties should be compelled to arbitration unless it can be said with "positive

assurance" that the party's claims do not fall within the scope of the Arbitration Agreement. *See*

<u>AT&T Techs.</u>, 475 U.S. at 650 (holding that once a court determines that an arbitration agreement

is broad in scope, an order to arbitrate should not be denied "unless it can be said with positive

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

dispute"); <u>Solvay Pharms., Inc. v. Duramed Pharms., Inc.</u>, 442 F.3d 471, 482 n. 10 (6th Cir. 2006)

("When faced with a broad arbitration clause, such as one covering any dispute arising out of an

agreement, a court should follow the presumption of arbitration and resolve doubts in favor of

arbitration. Indeed, in such a case, *only an express provision excluding a specific dispute, or the

most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute

from consideration by the arbitrators.*") (internal punctuation and citations omitted) (emphasis

---

[15] Notably, the Arbitration Agreement provided for arbitration of all "employment-related disagreements and problems." It did not state that only those claims falling within the "scope of employment" would be subject to arbitration. That concept (which explains when an employer may be held vicariously liable for an employee's conduct) is more limited than the scope of the Arbitration Agreement. The phrase "employment-related disagreements and problems" means that Plaintiff's claims must relate to employment, but that does not mean that Plaintiff's claims must be based upon incidents that allegedly occurred within the scope of employment. Consequently, the fact that Plaintiff's claims are based upon an incident that did not occur within the actual work conference does not mean that her claims are beyond the Arbitration Agreement.

added). As the Court of Appeals recently stated (in construing broad arbitration clauses):

> This Court has drawn a clear line between the extensive applicability of general arbitration provisions and the more narrow applicability of arbitration clauses tied to specific disputes. When faced with a broad arbitration clause, such as one covering any dispute arising out of an agreement, a court show follow the presumption of arbitration and resolve doubts in favor of arbitration. Indeed, in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.

Simon v. Pfizer, Inc., 398 F.3d 765, 775 (6th Cir. 2005) (internal quotations and citations omitted).

Having reviewed the scope of the Arbitration Agreement, and the nature of Plaintiff's claims against Combined Insurance, the Court cannot say with "positive assurance" that those claims are not subject to arbitration. In addition, there is not an express provision in the Arbitration Agreement excluding Plaintiff's claims from arbitration. *See* Pace Int'l Union, AFL-CIO, CLC v. Vacumet Paper Metalizing Corp, F. App'x 380, 384 (6th Cir. 2004) ("Finally because the presumption of arbitrability is not overcome by an express provision, [the plaintiff opposing arbitration] had the burden to produce 'forceful evidence' of an intention to exclude [the plaintiff's] claim from arbitration.") (citing AT&T Techs., 475 U.S. at 650). Given the broad scope of the arbitration clause–and the presumption that comes with it–it is Plaintiff's burden to establish that her claims are not subject to arbitration. Id. Plaintiff has said nothing on this issue.

Pursuant to Section Three of the FAA, 9 U.S.C. § 3, Plaintiff and Combined Insurance are **COMPELLED** to enter arbitration to resolve any "employment-related disagreements or problems" that form the basis of this lawsuit. The parties must comply with the terms of the Arbitration Agreement. Accordingly, Plaintiff's claims against Combined Insurance are **STAYED**[16] pending

---

[16] In Ozormoor v. T-Mobile USA, Inc., the Court of Appeals for the Sixth Circuit reaffirmed that district courts are not required to stay lawsuits when all claims against a party have been referred to arbitration. 354 F. App'x 972, 975 (6th Cir. 2009) (citing Arnold v. Arnold Corp., 920 F.2d 1269, 1275

completion of arbitration. To the extent that Combined Insurance argues that the case should be dismissed–rather than stayed–that request is **DENIED**. The STAY only applies to Plaintiff's claims against Combined Insurance. It does not affect Plaintiff's claims against AON or Mr. Barrett.

### B.    The Parties are Ordered to Brief the Court on Whether AON is a Subsidiary or Affiliate of ACE

Under the Arbitration Agreement, Plaintiff agreed to submit all of her "employment-related" claims against ACE *and* its subsidiaries and affiliates.[17] [Arbitration Policy, Doc. 4-2, at 2 n.1]. As background, ACE purchased Combined Insurance in 2008. [Defendants' Memorandum in Support of their Motion to Compel Arbitration, Doc. 5, at 2] [citation omitted]. Prior to this acquisition, Combined Insurance was a wholly-owned subsidiary of AON. [Id.]. It is unclear whether AON is a "subsidiary" or "affiliate" of ACE.

--------------------------------

(6th Cir. 1990) (stating that it was not "error for the district court to dismiss the complaint" after ordering arbitration)); Hensel v. Carquill, Inc., 198 F.3d 245, at *4 (6th Cir. 1999) (unpublished table decision) (upholding dismissal of "litigation in which all claims are referred to arbitration").

That being said, the Court of Appeals has encouraged district courts to stay actions as a general policy under these circumstances. *See* ATAC Corp. v. Arthur Teacher's, Inc., 280 F.3d 1091, 1101 (6th Cir. 2002) ("However, under the Arnold rule, in cases where there is a genuine legal question concerning arbitrability, a dismissal rather than a stay allows that question to be determined promptly on appeal. On the other hand, in the large majority of cases, the district court can speed along an arbitration about whose validity it thinks there is little legal dispute by staying the action rather than dismissing it. *The statute appears to contemplate this case-management advantage, and the courts of appeals should enforce that statutory scheme rather than create another test for appealability not grounded in the language of the statute.*") (emphasis added). As the Court of Appeals recognized in ATAC, this approach recognizes the clear mandate of the FAA, 9 U.S.C. § 3, which provides: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. To keep in line with the general policy–and the clear mandate of the FAA–the Court will stay Plaintiff's claims against Combined Insurance, rather than dismiss them.

[17] The Arbitration Agreement provided: "As issued herein, 'ACE' means ACE US Holdings, Inc., its subsidiaries and affiliates, and ACE INA holdings, Inc., its subsidiaries and affiliates, ACE Insurance Company, ACE Financial Services Inc., and its subsidiaries, and ACE Capital Re USA Holdings Incorporated and its subsidiaries." [Arbitration Policy, Doc. 4-2, at 2 n.1].

If AON is an affiliate or subsidiary of ACE, then Plaintiff's "employment-related" claims against AON are also subject to arbitration. At the moment, however, neither party has provided sufficient information about AON. Accordingly, the parties are **ORDERED** to brief the Court on whether AON is a subsidiary or affiliate of ACE. **The briefs are due within fourteen days of entry of this Memorandum and Order.**

> **C.** **Whether Mr. Barrett Should Receive Legal Representation is Referred to the Magistrate Judge**

On February 3, 2011, Mr. Barrett filed a letter with the Court requesting that he receive legal representation. [Doc. 11]. Mr. Barrett is currently incarcerated in a federal prison located in Edgefield, South Carolina, serving his sentence for recording the video of Erin Andrews. [Id.]. Mr. Barrett, who has appeared *pro se* in this matter, states that he is not "in a position to afford an attorney to defend [him] in this case," and that he is "hoping the Court can point me in the right direction, as to the names of Attornies or Legal aide in the Knoxville area who can assist me with my defense." [Id.].

Although there is no constitutional right to counsel in civil actions, Shepherd v. Wellman, 313 F.3d 963, 970 (6th Cir. 2002), the Court may choose–in its discretion–to appoint counsel under certain circumstances. Pursuant to the *in forma pauperis* statute, 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent *any person* unable to afford counsel" in a civil case. 28 U.S.C. § 1915(e)(1) (emphasis added). As the statute makes clear, courts may appoint counsel for *any person*; this includes both plaintiffs and defendants. 28 U.S.C. § 1915(e)(1). *See also* Johnson v. Doughty, 433 F.3d 1001, 1022 n.22 (7th Cir. 2006) (recognizing that 28 U.S.C. § 1915(e)(1) allows courts to appoint counsel for indigent defendants in civil cases) (citations omitted); Montag v. United States, No. CRIM.0079(1)(JRT/FLN, Civ. 02-4723(JRT), 2003 WL 22075759, at *1 (D.

Minn. Aug. 5, 2003) ("The Court also has the power to appoint counsel for defendants under 28 U.S.C. § 1915, which provides that a court may request an attorney to represent *any person* unable to afford counsel.") (emphasis added).

First, Mr. Barrett must show that he does not have the financial means to afford an attorney. 28 U.S.C. § 1915(e)(1). Second, because appointment of counsel in civil cases is not a constitutional right, "[i]t is a privilege that is justified only by exceptional circumstances." Lavado v. Keohane, 992 F.2d 601, 606 (6th Cir. 1993) (citations omitted). In determining whether "exceptional circumstances" exist, courts have "examined the type of case and the abilities of the plaintiff to represent himself." Id. (citations and internal quotations omitted). As the Court of Appeals for the Sixth Circuit has stated, "[t]his generally involves a determination of the complexity of the factual and legal issues involved." Id. (citation and internal quotations omitted). *See also* Lince v. Youngert, 136 F. App'x 779, at *2-3 (6th Cir. 2005) (holding that the district court did not abuse its discretion in denying the plaintiff's request for appointment of counsel under 28 U.S.C. § 1915(e)(1)). It is Mr. Barrett's burden to show that "exceptional circumstances" exist.

Keeping in mind these basic tenets, this matter is **REFERRED** to the Honorable C. Clifford Shirley, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and the Rules of this Court, for disposition or for a report and recommendation as may be appropriate.

## III.   CONCLUSION

Based upon the foregoing, the Motion to Compel Arbitration and Dismiss [Doc. 3] is **GRANTED IN PART AND DENIED IN PART**, whereby the Court makes the following rulings:

- **Plaintiff and Combined Insurance are COMPELLED TO ARBITRATE any "employment-related disagreements or problems" that form the basis of this lawsuit. The parties must comply with the procedures set forth in the Arbitration Agreement.**

30

Plaintiff's claims against Combined Insurance are **STAYED** pending completion of arbitration. To the extent that Combined Insurance argues that the case should be dismissed–rather than stayed–that request is **DENIED**.

- The parties are **ORDERED** to brief the Court on whether AON is a subsidiary or affiliate of ACE. If AON is a subsidiary or affiliate, then Plaintiff's "employment-related" claims against AON are also subject to arbitration. At this time, however, the Court has insufficient information regarding AON's status.

- Whether Mr. Barrett should receive legal representation is **REFERRED** to the Honorable C. Clifford Shirley, United States Magistrate. Mr. Barrett is currently incarcerated in a federal prison located in Edgefield, South Carolina. Judge Shirley shall determine whether appointment of counsel is appropriate under 28 U.S.C. § 1915(e)(1).

**IT IS SO ORDERED**.

**ENTER:**

_____s/ Thomas W. Phillips_____
United States District Judge